UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

Candice J.,

                            **Plaintiff,**

v.                                                                    5:22-CV-0902

COMMISSIONER OF SOCIAL SECURITY,

                            **Defendant.**
_____

**THOMAS J. MCAVOY**
**Senior United States District Court Judge:**

**DECISION and ORDER**

      Plaintiff Candice J. ("plaintiff" or "claimant") brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), for review of a final determination by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Social Security Disability ("SSD") benefits. (Dkt. No. 1). Plaintiff alleges that the Administrative Law Judge's ("ALJ") decision denying her application for benefits was not supported by substantial evidence and contrary to the applicable legal standards. (Dkt. No. 12). Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

**I.**      **PROCEDURAL HISTORY**

      On February 12, 2020, Plaintiff filed an application for SSD benefits, alleging disability beginning on January 2, 2017. Administrative Record ("R") at 273–74. Her application was initially denied, and she requested a hearing, which was held on May 13 and August 10, 2021. R. 35–66, 67–75, 117–20, 125–28. On August 25, 2021, Administrative Law Judge ("ALJ")

1

Bruce Fein issued an unfavorable decision. R. 4–16. On July 12, 2022, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. R. 23. This action followed.

## II.     LEGAL STANDARDS

### A.     Standard of Review

"District courts review a Commissioner's final decision pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3), and 'may only set aside a determination by the Commissioner if it is based on legal error or not supported by substantial evidence in the record.'" *Hill v. Comm'r of Soc. Sec.*, 19-CV-5096, 2020 WL 5768726, at *5 (S.D.N.Y. Sept. 28, 2020) (quoting *Cole v. Colvin*, 12-CV-8597, 2014 WL 1224568, at "*2 (S.D.N.Y. Mar. 24, 2014)). "Accordingly, [a court] must 'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied.'" *Rucker v. Kijakazi*, 48 F.4th 86, 91 (2d Cir. 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)). A court "will overturn a SSA decision only if the ALJ applies an incorrect legal standard, or if the ALJ's ruling is not supported by substantial evidence." *Id.* (citation omitted). "The substantial evidence standard is 'not high.'" *Id.* (quoting *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (quotation marks omitted)). "It is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quotation marks omitted)). Properly applied, this standard is highly deferential to the presiding ALJ, "who has seen the hearing up close." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019).

"[O]nce an ALJ finds facts, [the Court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d

443, 448 (2d Cir. 2012) (emphasis in original). The Court must not re-weigh evidence, assess the reliability of witnesses, or otherwise substitute its judgment for that of the ALJ. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997) (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). "However, this 'deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law.'" *Kenneth H. v. Comm'r of Soc. Sec.*, 21-CV-324, 2022 WL 2954364, at *3 (N.D.N.Y. July 26, 2022) (quoting *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003)). "Thus, 'where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards,' the decision should not be affirmed." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). "This is so regardless of whether or not the decision is otherwise supported by 'substantial evidence.'" *Id.* (citing *Johnson*, 817 F.2d at 986). Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

**B.     Determination of Disability**

To obtain disability benefits, the claimant must prove that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). The Commissioner evaluates disability claims using the five-step sequential process set forth at 20 C.F.R. § 404.1520(a)(4). The claimant has the burden of proof at steps one through four, which includes establishing her residual functional capacity ("RFC"). *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

A plaintiff's RFC is defined as "what an individual can still do despite his or her limitations.... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.]" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and] symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)). If the claimant reaches step five, the Commissioner must produce evidence that the claimant could perform a significant number of jobs given her age, education, work experience, and RFC. *Id.* Generally, the Commissioner can rely on Vocational Expert ("VE") testimony for that purpose. *Biestek*, 139 S. Ct. at 1152.

### III.   FACTUAL BACKGROUND

#### A.   Plaintiff's Background & Testimony

Plaintiff was born on May 30, 1972, and she has a high school education. R. 41–42. She previously worked in manufacturing, retail, and childcare. R. 43–46. Plaintiff testified that she had surgeries including cervical fusion at C5–C7, arthroscopic surgery on the right shoulder, and carpal tunnel surgery on the right hand. R. 47. Plaintiff said that she also tried physical therapy, medication, and injections for the pain in her neck, back, and legs. R. 48–49. Plaintiff testified

that she stopped working due to her pain, as well as stiffness, difficulty bending, lifting, and grasping objects, and depression. R. 49–54, 57. Plaintiff said that her symptoms also limited her ability to do household chores. R. 55–56.

### B.     Medical Records

On April 4, 2016, Plaintiff saw Physician's Assistant ("PA") David Hammack at St. Joseph's Hospital and reported right-sided low back pain and pain in the left leg and hip. R. 398–400. She reported a history of cervical fusion. R. 399. On examination, she had decreased range of motion and tenderness in the lumbar back. R. 401. She was advised to start physical therapy. R. 399. On April 22, 2016, she returned to St. Joseph's and reported worsening back pain after a car accident the day before. R. 403–05.

On August 15, 2016, Plaintiff had a nerve conduction study, which showed a chronic stable right C6–7 radiculopathy and no evidence of a peripheral nerve entrapment such as carpal tunnel syndrome. R. 644. On September 12, 2016, Plaintiff had an MRI of the cervical spine, which showed: previous fusion and the canal was well-decompressed; mild disc bulges with mild right foraminal stenosis at C3–4, C4–5, and C7–T1; and no significant canal stenosis. R. 647–48. Plaintiff was examined by PA Craig Hanifin on the same date. R. 875–78. PA Hanifin found that Plaintiff had: normal gait; minimally limited cervical and lumbar range of motion; mild tenderness on spine palpation; and intact motor function. R. 877. PA Hanifin assessed chronic low back pain, cervical radiculopathy, and chronic neck pain; Plaintiff was prescribed pain medication. R. 877.

On January 11, 2017, Plaintiff was seen at the New York Spine & Wellness Center and she reported neck, back, and leg pain. R. 702–07. On examination, Plaintiff showed: normal gait; normal lordosis; tenderness on palpitation of the paraspinal and trapezius muscles

bilaterally; normal range of motion without pain, strength of 5/5 in the upper extremities; and grip strength of 5/5. R. 705–06. She was assessed with cervical post-laminectomy syndrome, cervical disc herniation, cervical disc disorder with myelopathy, cervical radiculopathy, chronical cervical pain, and low back pain. R. 706.

On July 13, 2017, Plaintiff returned to New York Spine & Wellness and reported neck and right arm pain. R. 689. She also reported numbness, arm weakness, lower back pain, limb pain, joint pain, and neck pain radiating to the right shoulder and arm pain that was worsened by moving arms over her head, bending, driving, house chores, and lifting. R. 690. She said that the cervical fusion had not relieved her pain, nor had injections. R. 690. On examination, she had: tenderness on palpation of the left paraspinal and trapezius muscle; tenderness on palpation of the right trapezius muscle; right-sided or bilateral muscle spasms of the rhomboid muscles of the trapezius muscle; limited and painful range of motion flexion and extension; dizziness when moving her head with her eyes closed; and 4/5 strength of the wrist, elbow, shoulder, and right hand grip. R. 692. She was prescribed Hydrocodone and referred to an orthopedic surgeon. R. 693.

On August 7, 2017, Plaintiff saw PA Hammack and reported that injections had offered little relief for her pain; she had tenderness in the cervical back. R. 418–19. On January 11, 2018, Plaintiff received an injection at the C7–T1 level for her cervical and right upper extremity pain. R. 762. On January 31, 2018, Plaintiff received injections at the left trapezius, right trapezius, and left thoracic paraspinous. R. 676–77. On February 14, April 12, and June 19, 2018, Plaintiff returned to New York Spine & Wellness and reported neck pain that radiates into the right upper extremity. R. 662–75. She said that injections had not been helpful but Hydrocodone offered some relief. R. 666.

On August 15, 2018, Plaintiff returned to New York Spine & Wellness and reported low back pain that radiates into the right buttocks and right lower extremity that was worsened by sitting and walking.  R. 657–58.  On examination, she had painful range of motion and tenderness on palpation of the right paraspinal, sciatic notch, and sacroiliac joint.  R. 660.  She was assessed with chronic pain, low back pain, lumbar radiculopathy, and bulging lumbar disc; she was advised to undergo a nerve block.  R. 660.

On August 19, 2018, Plaintiff was examined and had normal range of motion of the neck but tenderness over the low back, especially L5–S1.  R. 438.  On August 24 and October 16, 2018, Plaintiff received injections at the L5–S1 level.  R. 760–61.  On September 24, 2018, Plaintiff returned to New York Spine & Wellness and reported chronic neck pain radiating to the right upper extremity/right hand and low back pain radiating to the right buttock and right hip.  R. 652–53.  On examination, she had: tenderness on palpation of the left trapezius muscle; tenderness on palpation of the right trapezius muscle; restricted and painful range of motion upon flexion and extension.  R. 655.  She was ordered another nerve block.  R. 656.

On November 6, 2018, Plaintiff reported neck and back pain, numbness, feeling of pins and needles, and aching.  R. 388–89.  She said that the pain in her lower back radiated to her right buttock, hip, thigh, knee, and ankle.  R. 389.  On examination, she had: pain down midline of the lumbosacral spine upon palpation; tenderness on palpation of the bilateral paraspinal, sciatic notch, and sacroiliac joint restricted and painful range of motion upon flexion and extension; 4/5 decreased strength of bilateral lower extremities at the hips, knees, and feet; and positive flip test of the right lower extremity.  R. 391.

On November 15, 2018, Plaintiff had an MRI of the lumbosacral spine, which showed: new, L5–S1 shallow right paracentral disc protrusion narrows the right later recess with

abutment and mild posterior displacement of the descending right S1 nerve root; mild diffuse T1 hyperintensity that remained greater than the disc signal; mild loss of disc signal at L5–S1; and mild facet hypertrophy at L4–5. R. 385.

On November 19, 2018, Plaintiff went to St. Joseph's Hospital and reported back pain, neck pain, stiffness, and allergies. R. 437. She had tenderness of the low back, specifically at L5–S1. R. 438. On December 11, 2018, Plaintiff went to Upstate Orthopedics and reported chronic low back pain radiating down her right lower extremity. R. 896. On examination, she had: difficulty transitioning from sitting to standing; she walked with a mildly antalgic gait; she had pain on palpation over bilateral lumbar paraspinals and midline spine; and limited flexion, extension, and rotation of the lumbar spine with pain. R. 897–98.

On December 11, 2018, an x-ray of the pelvis showed mild degenerative changes of the hips, pubic symphysis, and sacroiliac joints. R. 941. An x-ray of the lumbar spine showed: mild space narrowing; mild facet arthropathy; very mild levoconvex curvature of the lumbar spine; and mild degenerative changes of the sacroiliac joint. R. 941.

On January 2, 2019, Plaintiff underwent surgery for L5–S1 decompression, transforaminal lumbar interbody fusion, and posterior instrumental fusion surgery to address her lumbar spondylosis, foraminal disc herniation and spinal stenosis, chronic back pain, and right lower extremity radiculopathy. R. 469. On January 25, 2019, Plaintiff reported that she had complete resolution of her severe preoperative pain but mild to moderate persistent but improving surgical discomfort. R. 455.

On March 4, 2019, Plaintiff attended physical therapy and reported spasm, soreness, and pain in her low back. R. 957. On examination, she had: 4/5 strength in the upper extremities and lower extremities for hip adduction; 4-/5 strength for hip abduction and dorsiflexion strength

on the left; 3+/5 strength of hip flexion, plantarflexion, and right dorsiflexion; 3/5 strength for quadriceps; lumbar range of motion at 28 degrees upon flexion and ten degrees on extension with pain noted at end range. R. 957. On March 25, 2019, Plaintiff returned to New York Spine & Wellness and complained of right-sided lumbar pain radiating down to her leg, neck pain, and radiating back pain. R. 526–27. She further indicated her pain was exacerbated with bending, sitting, and standing. R. 527.

On August 7, 2019, Plaintiff had a nerve conduction study, which showed chronic C6 and/or C7 radiculopathy, with no evidence of an acute denervation or entrapment. R. 522. On August 16, 2019, Plaintiff had an MRI of the cervical spine, which showed: moderate canal and foraminal stenosis at C4/5 worse than previous exam. R. 624. On November 6, 2020, Plaintiff reported neck pain and numbness and tingling in her hands; x-rays showed stable postoperative changes and moderate degenerative disc disease at C4–C5. R. 925. On December 30, 2020, a nerve conduction study showed chronic right C7 radiculopathy and no carpal tunnel syndrome. R. 644.

## IV.   THE ALJ's DECISION

The ALJ engaged in the five-step analysis required by 20 C.F.R. § 416.920(a) to determine whether Plaintiff qualified for disability benefits. The ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of January 2, 2017 through her date last insured of March 31, 2019. R. 7. The ALJ found that Plaintiff had the following severe impairments: 1) degenerative disc disease of the cervical and lumbar spine (post C5–C7 anterior cervical discectomy and fusion), cervical and lumbar radiculopathy, and depressive disorder. R. 8 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. 404 Part

404, Subpart P, Appendix 1.  R. 13 (citing 20 C.F.R. §§ 404.1520(d), 404.152, and 404.1526).

Next, the ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20

C.F.R. § 404.1567(a), with the following restrictions:

> [S]he can occasionally climb ramps or stairs but never ladders, ropes or scaffolds, and can occasionally balance, stoop, kneel, crouch crawl, push and pull; she should avoid concentrated exposure to unprotected heights, and hazardous machinery.  She should work at a low stress job, defined as only occasional decision-making, changes in work setting, or judgment required on the job.

R. 10.  The ALJ found that through the date last insured Plaintiff was unable to perform any past

relevant work.  14.  The ALJ found that considering Plaintiff's age, education, work experience,

and RFC, there were jobs that existed in significant numbers in the national economy that she

could have performed.  R. 14.  Thus, the ALJ concluded that Plaintiff was not under a disability

during the relevant period.  R. 15.

## V.  DISCUSSION

### A.  The Parties' Arguments

On appeal, Plaintiff claims that the ALJ's decision is flawed for several reasons: 1) the

RFC determination is not supported by substantial evidence because the ALJ "failed to properly

evaluate the opinion evidence"; 2) the ALJ "overlooked significant evidence favoring Plaintiff's

claim of disabling physical symptoms, undermining the ALJ's evaluation of Plaintiff's

subjective complaints"; and 3) the ALJ "failed to reconcile his RFC determination with the jobs

identified at Step Five and failed to identify jobs that are not obsolete in the national economy."

(Dkt. Nos. 12, 15).  In response, the Commissioner asserts that the ALJ did not err and

substantial evidence supports his decision.  (Dkt. No. 13).

### B.  Assessing Medical Opinions

Under the new regulations applicable to Plaintiff's claim, the Commissioner will no longer give specific evidentiary weight to medical opinions. *Elizabeth P. v. Comm'r of Soc. Sec.*, 20-CV-891, 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022); *see Wanda N. v. Comm'r of Soc. Sec.*, 21-CV-358, 2022 WL 4376484, at *6 (N.D.N.Y. Sept. 22, 2022). "Rather, the Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on: supportability; consistency; relationship with the claimant (which includes the length of treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and examining relationship); specialization; and 'other factors.'" *Elizabeth P.*, 2022 WL 507367, at *4 (quoting 20 C.F.R. § 404.1520c(a)-(c)).

"The regulations explain that when 'evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings,' the 'most important factors ... are supportability ... and consistency.'" *Loucks v. Kijakazi*, 21-1749, 2022 WL 2189293, at *1 (2d Cir. 2022) (summary order) (footnote omitted) (quoting 20 C.F.R. § 404.1520c(a)); *see also Raymond M. v. Comm'r of Soc. Sec.*, 19-CV-1313, 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021) ("At their most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency of each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'") (citing *Jacqueline L. v. Commissioner*, 19-CV-6786, 2021 WL 243099, at *6 (W.D.N.Y. Jan. 26, 2021)).

"'Supportability' means '[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.'" *Celia A. B. v. Comm'r of Soc. Sec.*, 21-CV-112, 2022 WL 4225540, at *4 (N.D.N.Y. Sept. 13, 2022) (quoting 20 C.F.R. § 404.1520c(c)(1));

*see Andrea G. v. Comm'r of Soc. Sec.*, 20-CV-1253, 2022 WL 204400, at *4 (N.D.N.Y. Jan. 24, 2022) ("Under the supportability factor, the more a medical opinion or prior administrative medical finding is reinforced by 'relevant ... objective medical evidence and supporting explanations,' the 'more persuasive' it will be.") (quoting 20 C.F.R. § 404.1520c(c)(1), and citing *Carmen M. v. Comm'r of the Soc. Sec. Admin*, 20-CV-6532, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations.")).

"'Consistency' means '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.'" *Celia A. B.*, 2022 WL 4225540, at *4 (quoting 20 C.F.R. § 404.1520c(c)(2)).

As Judge Hummel recently explained:

"If the ALJ fails adequately to explain the supportability and consistency factors, or bases [his or] her explanation upon a misreading of the record, remand is required." *Rivera v. Comm'r of the Soc. Sec. Admin*., No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), report and recommendation adopted, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (citation and quotation marks omitted). . . .

"[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she] [i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  The Court "defer[s] to the Commissioner's resolution of conflicting evidence[.]" *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (citation and quotation marks omitted).  Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, "whether there is substantial evidence supporting the [plaintiff's] view is not the question [ ]; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis omitted). The ALJ must not "ignore evidence or cherry pick only the evidence from medical sources that support a particular pick only the evidence from medical

>> sources that support a particular conclusion and ignore the contrary evidence" but "[t]he Court will not reweigh the evidence that was before the ALJ." *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (citations and internal quotation marks omitted).
>
> "It is well settled that, under both the old and new regulations concerning the evaluation of medical evidence, an ALJ may rely on the opinion of a non-examining state agency consultant in disability claims." *Amber H. v. Saul*, No. 3:20-CV-490 (ATB), 2021 WL 2076219, at *5 (N.D.N.Y. May 24, 2021). "[A]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the reviewing court] to glean the rationale of an ALJ's decision." *Renalda R. v. Comm'r of Soc. Sec.*, 20-CV-0915 (TWD), 2021 WL 4458821, at *5 (N.D.N.Y. Sept. 29, 2021) (citations and quotation marks omitted).

*Elizabeth P.*, 2022 WL 507367, at *4. If the RFC assessment conflicts with an opinion from a medical source, "the adjudicator must explain why the opinion was not adopted." Social Security Ruling 96-8p, at *7 (July 2, 1996). The failure to do so is grounds for remand. *See Herrera v. Comm'r of Soc. Sec.*, 20-CV-6211, 2022 WL 4643044, at *7 (E.D.N.Y. Sept. 30, 2022).

    **C.**    **Analysis**

        **1.  Did the ALJ Err in Assessing the Medical Opinions?**

          **A.  David Hammack, P.A.**

PA Hammack completed a medical source statement for Plaintiff on August 18, 2021. R. 964–67. PA Hammack listed Plaintiff's diagnoses as chronic neck pain and depression, with symptoms being pain in the neck and numbness in the arms. R. 964. As to limitations, PA Hammack opined that Plaintiff could: 1) stand and sit for one hour at a time; 2) sit for four hours and stand/walk for two hours within an eight-hour workday; 3) occasionally use her bilateral upper extremities to grasp, turn, and twist objects with her hands, use her fingers for fine manipulation, and reach in all directions with either arm; and 4) rarely look down, turn her head right or left, look up, twist, stoop/bend, crouch/squat, and climb. R. 965. PA Hammack also said that Plaintiff would need to shift positions at will from sitting, standing, and walking; she

would occasionally need to take unscheduled breaks during an eight-hour workday every thirty minutes for ten minutes at a time; she would be off task 20 (twenty) percent of an eight-hour workday; and she would be absent three days per month.  R. 966.

The ALJ found that PA Hammack's opinion was "less persuasive."  R. 14.  According to the ALJ, PA Hammack's assessment was not supported by any explanations and was "inconsistent with [his] treatment records, and overstates the claimant limitations, particularly in light of the claimant work history."  R. 14.  The ALJ also stated that "[t]here is no indication in his records of attention problems or missed appointments and the claimant was caring for a 6-month-old in June 2021, therefore, the estimates for off task and absences are speculation that is not supported by the record."  R. 14.

Plaintiff argues that the ALJ failed to properly analyze the supportability and consistency of PA Hammack's opinion.  (Dkt. No. 12, at 7–14).  In response, the Commissioner contends that the ALJ articulated sufficient reasons for discounting PA Hammack's opinion.  (Dkt. No. 13, at 11–18).

First, the Court finds that the ALJ did not err in discussing the supportability of PA Hammack's opinion.  The ALJ stated that "no explanations are provided" for PA Hammack's assessment, which read in context, clearly refers to the fact that PA Hammack did not cite medical evidence or supporting explanations for his opinion.  *See* 20 C.F.R. § 404.1520c(c)(1).

However, the Court finds that the ALJ did err in discussing the consistency of PA Hammack's opinion.  The ALJ stated that PA Hammack's opinion was inconsistent with his treatment records.  But the ALJ did not review those treatment records, and they are generally consistent with PA Hammack's opinion.  For example, Plaintiff saw PA Hammack on August 7, 2017 and reported neck pain and stiffness, and she exhibited tenderness in the cervical back.  R.

418-19. On October 29, 2018, Plaintiff continued to report neck pain. R. 430. Furthermore, the ALJ failed to address the consistency of PA Hammack's opinion with relevant evidence from New York Spine & Wellness, where Plaintiff received extensive treatment for neck, back, and leg pain. *See* R. 388–89, 652–53, 657–58, 662–75, 689-90, 702–07. Examinations there often showed tenderness on palpation and limited/painful range of motion. R. 391, 655, 660, 692. Plaintiff was assessed with serious back and neck problems, for which she was prescribed Hydrocodone, received numerous injections, and ultimately had surgery. Based on the Court's review, Plaintiff's treatment records from New York Spine & Wellness are entirely consistent with PA Hammack's assessment of serious limitations.

In sum, the ALJ did not adequately address the consistency of PA Hammack's opinion with the medical evidence. And the Court cannot say that this error was harmless because the ALJ's decision to discount PA Hammack's opinion almost certainly affected the determination of Plaintiff's RFC.

### B.  P.A. Craig Hanifin

On September 12, 2016, PA Hanifin examined Plaintiff at Syracuse Orthopedic Specialists. R. 876–78. He noted that Plaintiff appeared to be in mild pain. R. 877. PA Hanifin found that Plaintiff had: normal gait; minimally limited cervical and lumbar range of motion; mild tenderness on spine palpation; and intact motor function. R. 877. PA Hanifin assessed chronic low back pain, cervical radiculopathy, and chronic neck pain. R. 877. PA Hanifin opined that Plaintiff could not lift over 15 pounds and that she should avoid repetitive lifting, pushing, pulling, and overhead activity. R. 878.

The ALJ found that PA Hanifin's opinion was "less persuasive" because it was rendered "prior to the alleged onset date, [and] does not specify the duration of these restrictions, which

are generally consistent with sedentary work." R. 13.  Plaintiff argues that the ALJ failed to evaluate PA Hanifin's opinion in accordance with the Regulations.  (Dkt. No. 12, at 15–16).  In response, the Commissioner contends that any error in the ALJ's analysis with respect to PA Hanifin did not affect the outcome.  (Dkt. No. 13, at 19–20).

First, the Court recognizes that PA Hanifin gave his opinion approximately four months before the alleged onset date of January 2, 2017.  But this fact did not excuse the ALJ from conducting a full analysis of PA Hanifin's opinion, particularly because PA Hanifin described Plaintiff's back and neck conditions as "chronic."  And as the Commissioner appears to concede, the ALJ's analysis falls far short of satisfying the Regulations.  Indeed, the ALJ did not specifically address the supportability or the consistency of PA Hanifin's opinion.  To the extent the Commissioner argues that this error was harmless, the Court is not convinced.  Notably, the limitations assessed by PA Hanifin are not entirely consistent with the RFC formulated by the ALJ.  For example, PA Hanifin opined that Plaintiff could not engage in repetitive lifting, whereas the ALJ incorporated the requirements of sedentary work, which places no limit on the frequency of lifting objects of 10 pounds or less.  *See* 20 C.F.R. § 404.1567(a).  Thus, the Court cannot overlook the ALJ's error in analyzing PA Hanifin's opinion.

**2. Did the ALJ Err in Evaluating Plaintiff's Symptoms?**

Next, Plaintiff argues that the ALJ "overlooked significant evidence favoring Plaintiff's claim of disabling physical symptoms, undermining the ALJ's evaluation of Plaintiff's subjective complaints." (Dkt. No. 12, at 19).  Specifically, Plaintiff asserts that the ALJ erred by focusing on evidence outside the relevant time period and ignoring "the majority of both treatment and examination findings, including that during the relevant time period, Plaintiff repeatedly reported numbness, arm weakness, and neck pain radiating to the right shoulder and

right arm pain." (*Id.*, at 20).  The Commissioner contends that Plaintiff has not shown any error, and that substantial evidence supports the ALJ's evaluation.  (Dkt. No. 13, at 20–22).

The Regulations require a two-step process for the ALJ to assess a claimant's subjective symptoms.  First, the ALJ considers whether the medical evidence shows any impairment "which could reasonably be expected to produce the pain or other symptoms alleged. . . ."  20 C.F.R. § 404.1529(a).  Second, if an impairment is shown, the ALJ must review all the available evidence and evaluate the "intensity, persistence, or functionally limiting effects" of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work.  20 C.F.R. §§ 404.1529(b)–(c).

As relevant here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 11.  With regard to Plaintiff's degenerative disc disease of the cervical lumbar spine, cervical and lumbar radiculopathy, and depression, the ALJ stated that "the evidence of record does not support her allegations regarding the intensity, persistence and limiting of these conditions." R. 11.  According to the ALJ, "[t]he diagnostic studies and clinical findings do not support the claimant's allegations regarding the intensity, persistence and limiting effects of her conditions." R. 11.  The ALJ also stated that Plaintiff's "treatment history does not support her allegations regarding the intensity, persistence and limiting effects of her conditions." R. 12.  The ALJ added that Plaintiff's "activities of daily living do not support her allegations." R. 12.

After careful review of the record, the Court finds that the ALJ's evaluation of Plaintiff's symptoms is not supported by substantial evidence. Although the ALJ stated that Plaintiff's treatment history did not support her alleged symptoms, he conducted only a cursory review of that history and ignored Plaintiff's extensive treatment at New York Spine & Wellness. As discussed above, Plaintiff repeatedly visited New York Spine & Wellness during the relevant time period and reported neck, back, and leg pain, for which she received medication and rounds of injections – all of which is consistent with her alleged symptoms. Similarly, the ALJ notes that Plaintiff's lumbar condition improved after surgery in January 2019, without recognizing the treatment leading up to the procedure.[1] To the extent the Commissioner argues that the ALJ was not required to analyze every piece of evidence, conversely he could not overlook extensive evidence of medical treatment that was highly relevant to an accurate assessment of Plaintiff's alleged symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(v).

### 3. Did the ALJ Err at Step Five?

Finally, Plaintiff argues that the ALJ "failed to reconcile his RFC determination with the jobs identified at Step Five and failed to identify jobs that are not obsolete in the national economy." (Dkt. No. 12, at 22). According to Plaintiff, "the ALJ's reliance on the VE's testimony to determine Plaintiff could perform other work at step five was legal error where the ALJ fails to recognize the extent to which each job is obsolete." (*Id.*, at 23). Plaintiff asserts that "[t]he ALJ has not provided a sufficient analysis supporting the conclusion that the VE's testimony that the occupation of addressing clerk, document preparer, and call out operator existed in significant numbers such that Plaintiff could perform other work at step five, resulting

---

[1] Indeed, Plaintiff is claiming disability as of January 2017, and the fact that she required surgery in January 2019 strongly supports her allegations of disabling pain in the preceding two years.

18

in harmful error." (*Id.*, at 25). In response, the Commissioner contends that Plaintiff fails to show that the ALJ erred in relying on the VE's testimony at Step Five. (Dkt. No. 13, at 22).

At the hearing, the ALJ asked the VE whether jobs existed in the national economy during the relevant time period for an individual with Plaintiff's age, education, work experience, and RFC. R. 61. The VE testified that someone in Plaintiff's position would have been able to perform the requirements of three occupations: 1) callout operator (24,000 jobs nationally); 2) addresser (23,000 jobs nationally); and 3) document preparation clerk (20,000 jobs nationally). R. 61. The VE testified that his opinion was consistent with the Dictionary of Occupational Titles ("DOT") and based on his professional experience and training. R. 59. The VE also testified that he derived his job numbers from either a software program called Job Browser Pro that uses information from the Bureau of Labor Statistics or U.S. Publishing which uses the same information. R. 62.

In general, although the Federal Rules of Evidence do not apply in Social Security proceedings, an ALJ may only rely on a VE's opinion where it rests on a sufficient foundation, such as "personal experience, labor market surveys, and published statistical sources." *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 407 (D. Conn. 2012), *aff'd*, 515 F. App'x 32 (2d Cir. 2013) (summary order). The Supreme Court has explained that whether a VE's opinion amounts to substantial evidence must be determined on a case-by-case basis, and that opinions clearing that bar must typically have some "markers of reliability." *Biestek*, 139 S.Ct. at 1157.

Here, the Court finds that the VE's opinion amounts to substantial evidence for the ALJ's Step Five Determination. Notably, although courts have recognized that some of the DOT titles cited by the VE refer to obsolete jobs, the VE specifically testified that the jobs he used were ones he had placed people in before and that he would not "give jobs that I don't believe exist in

the market." R. 62. The VE also testified that he obtained job numbers from software that had been recently updated with statistics from the Bureau of Labor. R. 62. Based on this testimony, it can be inferred that the VE accounted for any changes due to obsolescence. Thus, the Court finds that the VE's opinion had sufficient markers of reliability, and the ALJ did not err in relying upon it.[2] *See also Jones-Reid*, 934 F. Supp. 2d at 407 (finding that the ALJ did not err in relying upon VE testimony based on "reliable statistical sources as well personal knowledge and experience").

## VI. CONCLUSION

For the foregoing reasons it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED** and Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**. The decision of the Commissioner is **REVERSED,** and this matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Decision & Order.

**IT IS SO ORDERED.**

Dated: September 5, 2023

Thomas J. McAvoy
Senior, U.S. District Judge

---

[2] The Court also notes that the job of callout operator does not appear to be obsolete, and the 24,000 jobs attributed to that job would constitute a significant number in the national economy. *See Rosa v. Comm'r of Soc. Sec.*, 14-CV-1145, 2015 WL 7574516, at *7 (N.D.N.Y. Nov. 4, 2015) (finding that 11,903 jobs would constitute a significant number, observing that "[c]ourts have held that numbers varying from 9,000 upwards constituted 'significant'"), *report and recommendation adopted sub nom. Rosa v. Colvin*, 2015 WL 7573222 (N.D.N.Y. Nov. 25, 2015).